**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Jim Nelson, | Civil No. 24-4180 (DWF/DJF) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| SIS Software, LLC, *a Delaware Limited Liability Company doing business in Minnesota as SIS, LLC, doing business as SIS, LLC*, | |
| Defendant. | |

**INTRODUCTION**

This matter is before the Court on Plaintiff Jim Nelson's amended motion for default judgment (Doc. No. 19), and Defendant SIS Software, LLC's ("SIS")[1] motion to dismiss or, in the alternative, to transfer (Doc. No. 33). Each party opposes the other's motion. (Doc. Nos. 31, 50.) For the reasons set forth below, the Court denies the amended motion for default judgment and grants the alternative motion to transfer.

---

[1] The parties spent significant time arguing about the proper party name in relation to the summonses in this case. There are several limited liability companies with "SIS" in the name, all of which are related to SIS, LLC, which employed Nelson. (*See* Doc. No. 5 ("Am. Compl.") ¶¶ 2-13.) The Court does not focus on these distinctions because the proper defendant is now defending the case and the Court denies default judgment below.

## BACKGROUND

Nelson is a Minnesota resident with extensive experience in the areas of Enterprise Resource Planning and Enterprise Asset Management ("EAM") software. (Am. Compl. ¶¶ 1, 31.) In March 2023, he was considering applying for an EAM consulting opportunity with Clyde Construction Company ("Clyde") when SIS approached him and eventually offered him the position of Senior EAM Industry Consultant. (*Id.* ¶¶ 31-34.) In that position, Nelson would provide EAM consulting services to SIS's client base and specifically be tasked with implementing an EAM system for Clyde, an SIS client. (*Id.* ¶¶ 33-34.) Nelson alleges that SIS promised him that he would better off working at SIS instead of Clyde because direct employment with SIS could provide him with EAM consulting work that would last until his forecasted retirement date of 2030. (*Id.* ¶ 35.)

On Thursday, April 6, 2023, SIS emailed Nelson employment paperwork which included a four-page employment agreement (the "Employment Agreement"). (*Id.* ¶ 36.) The Employment Agreement contained details about Nelson's compensation and duties, as well as the following choice-of-law and forum-selection clauses:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia in all respects. The Parties shall litigate any dispute arising from or related to their business relationship in the federal court found in Fulton County, Georgia or, if that venue is unavailable, the Superior Court of Fulton County, Georgia. The Parties expressly consent to personal jurisdiction in these forums.

(Doc. No. 32 ¶ 7, Ex. C ¶ 14; *see* Am. Compl. ¶ 36.) The Employment Agreement also contained a noncompete clause that barred competitive activities "during the term of employment," and non-disclosure and non-solicitation clauses that prohibited such

2

activities for two years following the termination of Nelson's employment. (Doc. No. 32 ¶ 7, Ex. C ¶¶ 5-7.) SIS instructed Nelson "to quickly return the signed documents if he wanted the job so he could start Monday." (Am. Compl. ¶ 36.) Nelson promptly signed and returned the Employment Agreement and other documents. (*Id.* ¶ 38.)

During his employment with SIS, Nelson alleges that he was forced to assume duties that were outside of his job description, such as sales work. (*Id.* ¶¶ 41, 47-48.) Additionally, he was told to sell software to Clyde that SIS knew would not suit Clyde's needs. (*Id.* ¶ 48.) Nelson reported the push to sell improper software and other improper sales tactics to his supervisor and other managers, but SIS repeatedly pressured him to conceal information and follow his supervisor's instructions. (*See id.* ¶¶ 55-75.) On February 8, 2024, SIS terminated Nelson's employment. (*Id.* ¶ 83.) Nelson alleges that his termination was retaliation for his whistleblowing. (*Id.*)

Nelson filed this case against SIS on November 12, 2024. (Doc. No. 1.) He amended his complaint on November 27, 2024, bringing seven causes of action: (1) wrongful termination for whistleblowing in violation of the Minnesota Whistleblower Act; (2) fraudulent inducement; (3) promissory estoppel; (4) breach of contract; (5) breach of good faith and fair dealing; (6) violation of the Minnesota Personnel Record Review and Access Act; and (7) declaratory judgment. (Am. Compl.) In his declaratory judgment claim, Nelson asks the Court to declare the Employment Agreement unenforceable or, in the alternative, strike the noncompete and forum-selection clauses. (*Id.* ¶¶ 190-91.)

Nelson served the summons and amended complaint on "SIS SOFTWARE, LLC" on February 4, 2025. (Doc. No. 8.) About three months later, Nelson applied for an entry of default based on SIS's failure to respond to his amended complaint. (Doc. No. 14.) The Clerk of Court entered a default on May 6, 2025. (Doc. No. 15.) On June 4, 2025, Nelson moved for default judgment against SIS under Rule 55(b) of the Federal Rules of Civil Procedure. (Doc. No. 19.) SIS appeared on June 30, 2025, and subsequently moved to dismiss Nelson's amended complaint under Rule 12(b)(6) or, in the alternative, to transfer under 28 U.S.C. § 1404(a). (Doc. Nos. 27, 33.) Both motions are currently pending before the Court. (Doc. No. 56.)[2]

## DISCUSSION

**I.      Amended Motion for Default Judgment**

Courts have discretion over the entry of a default judgment. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 718 (8th Cir. 2019). "The entry of default judgment is not favored by the law and should be a rare judicial act." *In re Jones Truck Lines, Inc.*, 63 F.3d 685, 688 (8th Cir. 1995) (citation modified). Courts generally prefer adjudication on the merits. *See Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015). When considering a motion for default judgment, courts look at a variety of factors, including whether the moving party has been prejudiced by the delay, whether the

---

[2]     As part of their briefing on these motions, the parties filed several affidavits and declarations. The Court reviewed these submissions but only considered the Employment Agreement in making its decision. Even if it had considered the other information, its decision would be the same.

grounds for default are clearly established, and whether the nonmoving party has filed any responses or pleadings. *Id.*; *Rogovsky Enter., Inc. v. Masterbrand Cabinets, Inc.*, 88 F. Supp. 3d 1034, 1039-40 (D. Minn. 2015). "Default judgment for failure to defend is appropriate when the party's conduct includes willful violations of court rules, contumacious conduct, or intentional delays," but "is not an appropriate sanction for a marginal failure to comply with time requirements." *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996) (citation modified).

      Here, default judgment is inappropriate for a few reasons. First, it is unclear whether the February 4th summons was properly served on SIS because the parties dispute the proper LLC name. Regardless of whether SIS is correct that the wrong entity was served, there is enough confusion that the delay cannot be seen as willful or intentional. Second, the delay, if it can be considered one, was only about five months. Given the other context, this delay is not significant enough to be considered contumacious conduct. Third, Nelson has not demonstrated that he was prejudiced by this delay. Lastly, SIS has now appeared and is actively defending this case. Therefore, the Court denies Nelson's amended motion for default judgment.

## II.  Motion to Dismiss, or in the Alternative, to Transfer

SIS moves to dismiss the amended complaint or, in the alternative, to transfer this case to the Northern District of Georgia because of the Employment Agreement's forum-selection clause. The Court starts and ends with the alternative motion to transfer.[3]

A district court may transfer a civil case "to any other district or division where it might have been brought or to any district or division to which all parties have consented" after weighing "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). When the moving party invokes a forum-selection clause in its motion to transfer, the Court must determine: (1) whether the District of Minnesota is a proper venue; (2) whether the forum-selection clause is valid; and (3) whether the forum-selection clause is enforceable. *Rogovsky*, 88 F. Supp. 3d at 1040-41. The plaintiff bears the burden of showing that the forum-selection clause is invalid or unenforceable. *See Harris v. My Credit Guy, L.L.C.*, 763 F. Supp. 3d 845, 847 (D. Minn. 2025).

### A.  Venue

Venue can be proper in multiple districts, including "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). Here, the events giving rise to Nelson's claims occurred at the time of hiring and during his employment with SIS. Nelson worked for SIS exclusively from

---

[3]  SIS asked the Court to address its motion to dismiss first, then transfer any remaining claims to the Northern District of Georgia. The Court declines to do so.

6

Minnesota.  (*See* Am. Compl. ¶ 39.)  Therefore, a substantial part of the events giving rise to the claims occurred in Minnesota, making the District of Minnesota a proper venue.

     **B.**     **Validity**

"Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." *M.B. Rests., Inc. v. CKE Rests., Inc.*, 183 F.3d 750, 752 (8th Cir. 1999) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).[4]  Forum-selection clauses are also invalid where the nonmoving party will, for all practical purposes, be deprived of their day in court, or when enforcing the clause would contravene a strong public policy of the forum in which suit is brought.  *Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 974 (8th Cir. 2012); *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 790 (8th Cir. 2006).  Nelson asserts that the forum-selection clause is invalid because the Employment Agreement itself is invalid, the forum-selection clause is a product of fraud or overreaching, enforcing the clause would effectively deprive Nelson of his day in court, and enforcing the clause would contravene Minnesota public policy.  (Doc. No. 50 at 20-32.)  Nelson has not carried his burden on any of these arguments.

---

[4]    Courts disagree about whether state or federal law applies in determining the validity of a forum-selection clause in a diversity action.  *See Smart Commc'ns Collier Inc. v. Pope Cnty. Sheriff's Off.*, 5 F.4th 895, 897 n.2 (8th Cir. 2021).  The Eighth Circuit has not taken a position on this issue.  *See id.*  The Court need not take a position here because both Minnesota and Georgia apply the federal standard articulated in *Bremen*.  *See Equity Tr. Co. v. Jones*, 792 S.E.2d 458, 459 (Ga. Ct. App. 2016); *Hauenstein & Bermeister, Inc. v. Met-Fab Indus., Inc.*, 320 N.W.2d 886, 889-90 (Minn. 1982).

1.  **Validity of the Employment Agreement**

Nelson argues specifically that the Employment Agreement is invalid because it is unconscionable, a contract of adhesion, and was signed under duress. (*Id.* at 24-29.)[5] First, the Employment Agreement is not unconscionable. "A contract is unconscionable if 'no clear-thinking person would make it, or if no such person would accept it.'" *Carlson v. BMW Fin. Servs. NA, LLC*, 762 F. Supp. 3d 820, 826 (D. Minn. 2025) (quoting *Wold v. Dell Fin. Servs, L.P.*, 598 F. Supp. 2d 984, 988 (D. Minn. 2009)). Nelson argues that he was rushed to sign the agreement, that the agreement contains boilerplate language, that there was unequal bargaining power, that he was not informed about the differences in the law, and that he was misled about his job duties. Even taken as true, these things do not make the contract unconscionable. Boilerplate language, unequal bargaining power, and choice-of-law provisions are common in employment agreements, so it does not follow that no clear-thinking person would accept such an agreement. Additionally, Nelson has not shown that SIS had an affirmative duty to explain the possible impact of each provision in the contract or that SIS denied him the opportunity to negotiate terms or consult a lawyer.

The Employment Agreement is not a contract of adhesion. "Minnesota courts may refuse to enforce contracts of adhesion." *Siebert v. Amateur Athletic Union of U.S., Inc.*,

---

[5] The parties primarily rely on Minnesota law in their arguments about the validity of the Employment Agreement, so the Court applies Minnesota law. (*See* Doc. No. 35 at 7-11; Doc. No. 50 at 24-25; *cf. John T. Jones Constr. Co. v. Hoot Gen. Constr. Co.*, 613 F.3d 778, 782-83 (8th Cir. 2010) (applying forum state's contract law to determine validity of contract before following law in choice-of-law provision).)

422 F. Supp. 2d 1033, 1040 (D. Minn. 2006).  A contract of adhesion is a contract where (1) there is "a great disparity in bargaining power with no opportunity for negotiation," and (2) "the services offered by defendants are a public necessity and cannot be obtained elsewhere."  *Id.*  While Nelson has pleaded some disparity in bargaining power, he has not shown that employment with SIS is a public necessity and that he could not obtain employment elsewhere.  *See Butler v. ATS Inc.*, No. 20-cv-1631, 2021 WL 1382378, at *20 (D. Minn. Apr. 13, 2021); *cf. Johnson v. Hubbard Broad., Inc.*, 940 F. Supp. 1447, 1456 (D. Minn. 1996) ("[T]he mere allegation that an arbitration agreement resulted from an inequality of bargaining power simply will not suffice to invalidate the agreement.").

Nelson's claim of duress is similarly unavailing.  Duress means "coercion by means of physical force or unlawful threats which destroys the victim's free will and compels him to comply with some demand of the party exerting the coercion." *Olmsted v. Saint Paul Pub. Schs.*, 830 F.3d 824, 828 (8th Cir. 2016) (quoting *Wise v. Midtown Motors*, 42 N.W.2d 404, 407 (Minn. 1950)).  Nelson has not alleged any physical force or anything that could amount to an unlawful threat.

To the extent that Nelson claims any other grounds that would invalidate the Employment Agreement, such as misrepresentation, he has not provided sufficient explanation of the law supporting his assertion.  The Court finds that the Employment Agreement is prima facie valid.

### 2. Fraud and Overreaching

Nelson's arguments that the clause itself is invalid also fail.  Nelson alleges fraud based on SIS's superior bargaining power, that SIS told him to quickly complete the

9

employment paperwork, and that multiple LLCs with the name "SIS" are registered around the country. (Doc. No. 50 at 20-22.) "Mere disparity in bargaining power, or lack of opportunity to negotiate, does not render a forum selection clause unenforceable." *See Siebert*, 422 F. Supp. 2d at 1046. Moreover, Nelson did not allege that he was denied the opportunity to negotiate or additional time to consider the agreement. It is also unclear why the existence of multiple interrelated LLCs amounts to fraud and Nelson provides no legal support for that assertion. Nelson has not shown that the forum-selection clause is a product of fraud or overreaching.

### 3. Deprivation of Day in Court

Nelson also claims that he will be deprived of his day in court if the clause is enforced because litigating in Georgia would be inconvenient, he cannot afford it. (Doc. No. 50 at 16, 23-24.) Inconvenience alone is insufficient to show a party will be deprived of their day in court. *M.B. Rests.*, 183 F.3d at 753. Instead, the party must show that "proceeding in the contractual forum will be . . . gravely difficult." *Union Elec. Co.*, 689 F.3d at 974 (citation modified). Being unable to afford litigation in the selected forum is insufficient to show that level of difficulty. *See Servewell*, 439 F.3d at 790. Nelson has not shown that he will be deprived of his day in court.

### 4. Public Policy

Lastly, Nelson argues that the forum-selection clause is invalid because enforcing it would contravene Minnesota public policy. (Doc. No. 50 at 29-32.) A forum's public policy can be found in statutes or judicial decisions. *Bremen*, 407 U.S. at 15; *see also Hagstrom v. Am. Cir. Breaker Corp.*, 518 N.W.2d 46, 48-49 (Minn. Ct. App. 1994)

(looking to state statutes to determine the state's public policy). Other courts in this Circuit have found a strong public policy and invalidated a forum-selection clause where a state statute existed that expressly voided forum-selection clauses in particular kinds of agreements. *E.g.*, *Advanced Int'l Mktg., LLC v. LXR Biotech, LLC*, No. 17-cv-5086, 2017 WL 4780628, at *3 (W.D. Ark. Oct. 23, 2017); *Black Hills Truck & Trailer, Inc. v. MAC Trailer Mfg., Inc.*, No. 13-cv-4113, 2014 WL 12768809, at *3-5 (D.S.D. Apr. 14, 2014); *Union Elec. Co. v. Energy Ins. Mut. Ltd.*, No. 10-cv-1153, 2013 WL 5291701, at *2-4 (E.D. Mo. Sep. 19, 2013).

Nelson argues that a 2023 Minnesota statute banning noncompete agreements evidences a strong public policy in favor of having the rights of Minnesota residents who work within the state adjudicated in Minnesota. In 2023, Minnesota enacted legislation that voids noncompete clauses in employment agreements entered into on or after July 1, 2023, subject to a few exceptions. Act of May 24, 2023, ch. 53, art. 6, § 1, 2023 Minn. Laws 1214, 1266; Minn. Stat. § 181.988 subdiv. 2. The noncompete statute further provides that forum-selection and choice-of-law clauses are voidable by an employee who primarily resides and works in Minnesota. Minn. Stat. § 181.988 subdiv. 3. Notably, the statute does not ban non-disclosure or non-solicitation agreements and only applies to noncompete clauses that restrict an employee's activities "after termination of the employment." *Id.* § 181.988 subdiv. 1(a).

While the Court agrees that this statute evidences a strong public policy even though the Employment Agreement was signed prior to its effective date, the Employment Agreement does not contain a noncompete agreement as defined by the

11

statute. The noncompete clause only covered the duration of Nelson's employment. The other clauses are non-disclosure and non-solicitation clauses. Therefore, while there is a strong public policy regarding noncompete clauses, that public policy does not touch the issues in this case. In conclusion, the forum-selection clause is valid.

### C. Enforceability

Under a traditional § 1404(a) analysis, courts balance private-interest and public-interest factors to determine the proper forum. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). When there is a valid forum-selection clause, the analysis changes in three ways: (1) courts do not give weight to the plaintiff's choice of forum; (2) courts do not consider the parties' private interests; and (3) the original venue's choice-of law rules do not transfer with the case. *Id.* at 62-64. Here, Nelson has not raised any grounds for finding the forum-selection clause unenforceable aside from his own private interests, which cannot be considered. Nelson has not carried his heavy burden of overcoming the valid forum-selection clause, so the Court finds it is enforceable and transfers this case to the Northern District of Georgia.

## ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

1. Plaintiff Jim Nelson's amended motion for default judgment (Doc. No. [19]) is **DENIED**.

2. Defendant SIS Software, LLC's motion to dismiss or, in the alternative, to transfer (Doc. No. [33]) is **GRANTED IN PART**.

3.       This action shall be transferred to the Northern District of Georgia. The Clerk of Court is directed to effectuate the transfer.

Dated: September 25, 2025                    s/Donovan W. Frank
                                                              DONOVAN W. FRANK
                                                              United States District Judge